**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-24-00379-CR**
_____

**MARK WAYNE SHORTEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 23-07-10765-CR**

**MEMORANDUM OPINION**

In July 2024 a grand jury indicted appellant, Mark Wayne Shorten, and alleged that in a period of 30 or more days between March 31, 2009, through March 30, 2014, he committed two or more acts of sexual abuse against a child who was identified in the indictment by her initials. Tex. Penal Code Ann. § 21.02(b) (continuous sexual abuse of a young child). We will call the child who is identified as an alleged victim of Shorten's offenses as *Julie*, and we note she is Shorten's

1

daughter.[1] After the trial court signed the judgment, Shorten appealed and filed a brief in which he complains of three issues. In his first issue, Shorten argues the trial court erred in excluding testimony under Texas Rule of Evidence 412. In his second and third issues, Shorten complains that he received ineffective assistance of counsel. For the reasons discussed below, we will affirm.

Background

The case against Shorten went to trial in October 2024. Since Shorten doesn't challenge the sufficiency of the evidence supporting his conviction, we limit our discussion of the facts to that which is needed to explain the Court's resolution of the issues raised in Shorten's appeal, and in doing so, we view the evidence in the light that favors the verdict. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

Julie was nine when she moved to Splendora. She lived with her parents, Mark Shorten and Sherrie Shorten, her brother, *Carl,* who is six years younger than Julie, and Hazel Burts, who is Sherrie's aunt. Julie has other siblings who are older, including *Barbara*, whom she does not know well because she "never was allowed

---

[1]We have used pseudonyms to protect the privacy of several individuals who are mentioned in the opinion. *See* Tex. Const. art. 1, § 30 (protecting a crime victim's "right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process"). We identify that we have used a pseudonym in lieu of the actual name with italics when the person is first mentioned in the opinion.

to." Julie spent a majority of her childhood in Splendora, where the family moved in 2009 and lived in a renovated school bus, and that is when Shorten began molesting Julie.

When the family lived in the school bus, Hazel would take Julie's mother to work in Houston and Shorten and Julie would be alone in the school bus. Shorten insisted that Carl go with Hazel and Sherrie but he would not allow Julie to go with them. On the first occasion when Shorten and Julie were alone in the school bus, Shorten took Julie to the bathroom with him. Shorten wanted Julie to make him happy and offered her one hundred dollars, but Julie refused. Shorten told Julie she needed to trust him, so she did. They went to the bathroom in the bus and Shorten closed the door. Shorten wanted Julie to bend over and touch the floor or her ankles and had Julie pull her pants down. Shorten then started "putting his finger in [her] butt" and it hurt Julie. Julie told Shorten that it hurt, and Shorten responded, "Well, you should learn to like it." Shorten asked Julie if she could handle more of that, and Julie said "No."

Shorten penetrated Julie's anus with his finger in this incident twice. After the sexual assault was finished, Shorten and Julie went to the front portion of the bus where Shorten's bed was located. Shorten asked her "how that had felt again and wanted to know if [Julie] thought [she] could take more." Shorten told Julie that it

would make him happy for Julie to do it again and that it would be their "little secret." Shorten told Julie not to tell her mother what Shorten did to Julie.

Later that afternoon, Hazel and Carl went to pick up Sherrie from work. Shorten wanted Julie to lie on the bed beside him. Shorten showed her a video of a couple performing oral sex on each other. Shorten showed Juile what the woman was supposed to do for the man, that they enjoyed it, and that Julie should learn how to do it. Shorten closed the video when Hazel and Sherrie returned to the bus.

For the next few weeks, when Julie's aunt and mother would leave for work, Shorten continued to take Julie to the bathroom and put his finger in her anus. Shorten penetrated Julie's butt with his finger every day for almost two weeks, and this usually occurred in the bathroom. These acts slowly graduated from his finger to his penis.

Shorten wanted Julie to bend over in front of him, eventually moving to the sink. Shorten's penis penetrated Julie's anus while his hands were on her hips. When Shorten sexually assaulted her in this way, it hurt, and she felt "empty." After Shorten finished sexually assaulting Julie, they went to the front part of the bus, and he asked her how she felt about it. Julie told Shorten that she "definitely didn't like it and that it hurt" and that she "didn't want to do that." Shorten told her that "it was something that [Julie] needed to learn to do[,]" that it was good for Julie, and that she "needed to learn that it made him happy, and [Julie] needed to make him happy."

4

At the time this sexual assault occurred, Julie was nine years old. Shorten penetrated Julie's anus with his penis about a dozen times and on some of these occasions, Shorten ejaculated inside Julie.

Julie described the sexual assaults as getting "aggressively worse[]" after Shorten assaulted her by putting his penis in her anus. Shorten asked more of Julie, moving from the bathroom to being on her side in front of him while he was behind her in Shorten's bed. Within a few months, Shorten put his penis in Julie's vagina. Shorten told Julie to take off her shorts and panties and penetrated Julie. Eventually, Shorten would have Julie lie on her back and Shorten would touch Julie with his fingers and try to put his fingers inside of Julie.

Shorten told Julie that "it would hurt less if he could put [his penis] in [Julie's] vagina." Julie did not want to do this. When Shorten put his penis inside her vagina, Julie felt a burning sensation, and it hurt. Julie told Shorten that it hurt but Shorten responded that Julie needed to learn to like it. Once Shorten began penetrating Julie vaginally with his penis, he did not go back to penetrating her anally. These sexual assaults occurred every other day at first and then went down to twice a week. The sexual assaults continued until Shorten was arrested.

In March 2012, CPS became involved in Julie's life, and she was sent to live in a foster home with Carl. In September 2012, Julie learned she was going to go back to live with her parents. After the children were returned to the custody of their

5

parents in the middle of 2013, Shorten's sexual assaults of Julie resumed. Julie was thirteen years old. Shorten would sexually assault Julie by penetrating her vagina with his penis. The sexual assaults occurred in the evenings when Sherrie was at work and after Carl went to bed. These assaults happened at least three times a week.

When Julie was around seventeen, she and Shorten moved into a house that was on their property in Splendora while Sherrie and Carl continued living in the school bus. When Julie was alone in the house with Shorten, Shorten would have Julie come over to his bed at night. He would have Julie lie on her back. He would get on top of Julie and put his penis in her vagina. Shorten would sexually assault Julie in this manner three to four times a week.

When Julie was around seventeen years old, her friends observed a change in her behavior. She stopped talking to her friends, and she would not look anyone in the eye. When Julie did communicate, she implied that she was being abused and that she was not safe. Julie told her friend Faith that she did not leave home because "she was afraid that something bad will happen to [] the people she cares about. She's afraid that her dad might come after her." Juile told Faith that Shorten has threatened her and gave Julie a bullet. Julie's friends encouraged Julie to leave her home and offered her assistance to do so. Several of Julie's attempts to get away from Shorten were unsuccessful.

6

In 2021 and 2022, when Julie was twenty-one or twenty-two years old, she began meeting people online, in particular on an online chat platform called Discord. It was during this time that Julie and her friends met Jon Fedyschyn, and his wife Abby, who lived in St. Louis, Missouri. Julie grew to trust Jon above all others.

Julie eventually disclosed to her friends what was happening in her house. She told them she was being yelled at and berated and having to share a room and bed with her father. Julie eventually told them that Shorten had been sexually abusing her on a daily basis and that he had been sexually abusing her since before she was ten years old.

On July 25, 2022, Shorten and Sherrie told Julie to put her bag in the car because they were leaving. Sherrie took Juile to Lancaster, which is near Dallas. She and Sherrie stayed in a Motel 6 and the next morning, Sherrie put her in a hotel room at the Spanish Trails Inn. Sherrie paid for a week for the hotel room. Sherrie called Shorten and told him, "Yeah, we're here, everything's done[.]" Sherrie then left in her car and Julie was alone in the motel room. Julie called Jon with a Tracfone supplied by Sherrie.

Julie let Jon know what was happening, and Jon started calling and texting their other friends to let them know what happened with Julie. They decided that Jon would drive down from St. Louis to Lancaster and pick her up. Jon picked her up on July 28 and they went to another hotel room that one of Julie's friends paid for. The

next day, Julie and Jon drove back to Jon's apartment in St. Louis. While in St. Louis, she reached out to the Montgomery County Women's Center for help with a protective order. Julie stayed with Jon and Abby for ten days. Julie made plans to return to Texas to file a police report.

Law enforcement investigated the sexual assaults and was able to corroborate statements Julie gave to the police. Shorten was arrested on July 26, 2023.

During the trial, Shorten sought to introduce testimony that Julie sexually abused Carl and had a sexual relationship with Jon Fedyschyn. This testimony was excluded, and on appeal, Shorten argues that the trial court misapplied Texas Rule of Evidence 412 and violated Shorten's Sixth and Fourteenth Amendments right to confront witnesses against him.

The trial court held an *in camera* hearing as required by Rule 412. *See* Tex. R. Evid. 412(e). At the hearing, Carl explained that while Julie and Carl lived in the foster home, Julie began sexually assaulting Carl. After they returned to the bus, Julie re-instigated the sexual assaults against Carl, and just before Julie was taken to Dallas, Julie attempted to sexually assault Carl, but Carl's bed banged against the wall, alerting Shorten, who told Carl he was ready to talk whenever Carl was ready. Carl made his outcry about a year later when police executed a search warrant on the residence. Carl told a forensic interviewer that he was tired of his dad being accused of molesting his sister.

8

The trial judge ruled that the defense had failed to meet the standard under Texas Rule of Evidence 412 as it relates to showing motive or bias on the part of the alleged victim in the pending case.

In a hearing outside the jury's presence, Shorten also asked to present testimony regarding the open marriage of Abby and Jon Fedyschyn and how Julie, Jon, and Abby "all had sex together." Shorten wanted to present this testimony to rebut the State's theory that Julie left the home because she was controlled and not allowed to do anything. The defense claimed that this evidence was relevant because Julie went to Missouri not to escape from Shorten, but to engage in this type of lifestyle. The trial court ruled the defense was not allowed to question Jon about Julie's relationship with him and Abby under Texas Rule of Evidence 613(b) and 412. Shorten made an offer of proof.

At the conclusion of the trial, the jury found Shorten guilty of continuous sexual abuse as charged in the indictment. In the punishment phase of the trial, the jury assessed a life sentence. The trial court signed a judgment consistent with the jury's verdict and Shorten appealed.

Analysis

In his first issue, Shorten argues the trial court erred in excluding testimony regarding Julie's alleged sexual abuse of Carl and her alleged sexual relationship

9

with Jon and Abby Fedyschyn. We review a trial judge's decision on the admissibility of evidence under an abuse-of-discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial judge abuses her discretion when her decision falls outside the zone of reasonable disagreement. *Id.* "If the trial court's evidentiary ruling is correct under any applicable theory of law, it will not be disturbed even if the trial court gave a wrong or insufficient reason for the ruling." *Id.*

Generally, relevant evidence is admissible, and irrelevant evidence is inadmissible. *See* Tex. R. Evid. 402. Relevant evidence tends to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action. *Id.* 401.

The United States Constitution and the Texas Constitution provide that an accused will have the right to confront witnesses against him. *See generally* U.S. CONST. amend. VI; Tex. Const. art. I, § 10.

> The Sixth Amendment right to confront witnesses includes the right to cross-examine witnesses to attack their general credibility or to show their possible bias, self-interest, or motives in testifying. This right is not unqualified, however; the trial judge has wide discretion in limiting the scope and extent of cross-examination. Generally, the right to present evidence and to cross-examine witnesses under the Sixth Amendment does not conflict with the corresponding rights under state evidentiary rules.

*Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (internal citations omitted). A trial court violates a defendant's right of confrontation if it improperly

10

limits appropriate cross-examination. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). Whether rooted in the Due Process Clause of the Fourteenth Amendment or the Confrontation Clause of the Sixth Amendment, the Constitution guarantees criminal defendants the opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). The constitutional right to present a defense includes the right to compulsory process and the rights to confront and cross-examine witnesses. *Pointer v. Texas*, 380 U.S. 400, 405 (1965).

A defendant's right to cross-examination is not unqualified, however. *Johnson*, 490 S.W.3d at 909. A defendant "is not entitled to cross-examination that is effective in whatever way, and to whatever extent, he might wish." *Id.* at 909-10 (internal quotations and citations omitted). Trial judges have wide latitude to limit the scope of cross-examination by imposing restrictions on cross-examination. *Id.* at 910. A trial judge may limit the scope if the limits do not infringe upon the Confrontation Clause's guarantee of "'an opportunity for effective cross-examination.'" *Id.* at 909 (quoting *Johnson v. State*, 433 S.W.3d 546, 551 (Tex. Crim. App. 2014)).

Because the right to present evidence and cross-examine witnesses under the Sixth Amendment generally does not conflict with corresponding rights under state evidentiary rules, questions involving cross-examination can be resolved by looking to the Texas Rules of Evidence. *See Hammer*, 296 S.W.3d at 561. One such rule,

11

Texas's "rape shield" law, places constraints on the admission of evidence of a complaining witness's past sexual behavior. *See generally* Tex. R. Evid. 412. Evidence of a complaining witness's past sexual behavior, either in the form of specific instances of conduct or reputation or opinion evidence, is generally inadmissible in a criminal sexual assault trial. *See id*. 412(d).[2] The rule bars evidence of a victim's prior sexual conduct unless the trial court determines, after a hearing outside the jury's presence, that the probative value of the evidence outweighs the danger of unfair prejudice to the alleged victim, and that the evidence falls within one of five exceptions: (1) it is necessary to rebut or explain scientific or medical evidence offered by the State; (2) it concerns past sexual behavior with the defendant and is offered by the defendant to establish consent; (3) it relates to the motive or bias of the alleged victim; (4) it is admissible under rule 609; or (5) it is constitutionally required to be admitted. *See id.* 412(d)(2).

Although the rule allows for the admission of evidence of specific instances of a victim's past sexual behavior under certain circumstances, "[t]he Constitution requires, however, only the introduction of otherwise relevant and admissible evidence." *Hale v. State*, 140 S.W.3d 381, 396 (Tex. App.—Fort Worth 2004, pet. ref'd) (citing *U.S. v. Nixon*, 418 U.S. 683, 711 (1974)). Therefore, before a victim's sexual behavior can be admitted under Rule 412(b)(2), the defendant must establish

---

[2]We cite to the most current version of this rule.

the evidence's relevancy to a material issue in the case. *See id.* And even if the evidence meets one of the exceptions, the inquiry does not end there; the probative value of the proffered evidence must also outweigh the danger of unfair prejudice. *See* Tex. R. Evid. 412(b)(3); *State v. Dudley*, 223 S.W.3d 717, 724 (Tex. App.— Tyler 2007, no pet.).

Specific instances of a witness's conduct, for purposes of attacking the witness's credibility, other than conviction of crime, may not be inquired into on cross-examination nor proved by extrinsic evidence. Tex. R. Evid. 608(b). However, such evidence may be admissible to prove bias, self-interest, or motive for testifying. *Hammer*, 296 S.W.3d at 563. The right of cross-examination afforded by the United States and Texas Constitutions encompasses exposure of a witness's motivation for testifying and is offended if an evidentiary rule prohibits a defendant from cross-examining a witness concerning possible motives, bias, and prejudice such that he could not present a vital defensive theory. *Id*. at 562-63. "[T]he opponent must first cross-examine the witness with the circumstances surrounding the bias, interest, or motive, and, if the witness denies the circumstances or the motive, the opponent may introduce extrinsic evidence to prove the motive or bias." *Id.* at 563; *see* Tex. R. Evid. 613(d). Under Texas law, "[t]he proponent of evidence to show bias must show that the evidence is relevant. The proponent does this by demonstrating that nexus, or logical connection, exists between the witness's testimony and the witness's

13

potential motive to testify in favor of the other party." *Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004).

At trial, Shorten's attorney argued that the allegations that Julie sexually assaulted Carl showed Julie's bias or motive in the case against Shorten. However, the trial court was not provided any evidence that Julie's allegations against Shorten were in response to allegations that Julie was allegedly sexually assaulting Carl. To the contrary, the evidence indicates Carl first made an outcry about Julie after she began making allegations about Shorten. *See Winkler v. State*, No. 07-22-00285-CR, 2024 WL 1422775, at *2-3 (Tex. App.—Amarillo Apr. 2, 2024, pet. ref'd) (mem. op., not designated for publication) (finding no abuse of discretion excluding testimony regarding complainant's sexual abuse against her brothers when the evidence did not show the complainant had confessed to or been investigated for the abuse prior to her outcry against the appellant). Carl's excluded testimony regarding the alleged sexual assaults by Julie did not relate to Julie's alleged bias against Shorten. *See, e.g., Reynolds v. State*, 371 S.W.3d 511, 521 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (finding no logical connection existed between victim's dislike of appellant's mother and her motive to testify against appellant and give false testimony; thus, no error in excluding such testimony).

With regard to Shorten's attempt to introduce evidence regarding the purported sexual relationship among Julie, Jon, and Abby, that evidence was

14

proffered to show why Julie went to Missouri or why Jon wanted Julie to go to Missouri. Julie's alleged desire for a sexual relationship with Jon and Abby or Jon's alleged desire for a sexual relationship with Julie did not relate to Julie's bias against Shorten or Julie's motive for accusing Shorten of molesting her. The trial court may also have reasonably concluded that the potential probative value of such testimony was substantially outweighed by the prejudicial effect of such evidence. *See Robisheaux v. State*, 483 S.W.3d 205, 225 (Tex. App.—Austin 2016, pet. ref'd).

We conclude Shorten failed to establish a logical nexus between Carl's proffered testimony and any motive or bias on the part of Julie. We also conclude the evidence of Julie's alleged sexual relationship with Jon and Abby did not relate to Julie's motive or bias to testify against Shorten. We hold that the trial court did not abuse its discretion in ruling the evidence inadmissible under Rule 412. We overrule Shorten's first issue.

*Ineffective Assistance of Counsel*

In his second issue, Shorten complains that defense counsel rendered ineffective assistance of counsel in the examination of Sherrie Shorten because no probative evidence was developed during the questioning and the examination questions were "so repetitive and without apparent direction that the Court gives her a 15 minute warning and then ends the examination." In his third issue, Shorten complains that defense counsel was ineffective in his examination of Barbara

because he had to "ask the Court how to lay [the] predicate for his questions in his cross examination of [Barbara]" and he was ineffective in the examination of the appellant because "he violated agreed Motions in Limine and Rule 412." We address these issues together.

To prevail on a claim of ineffective assistance of counsel, an appellant must meet a two-pronged test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). *Strickland* requires an appellant to show a reasonable probability that, but for his counsel's errors, the outcome of his trial would have been different. *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). A reasonable probability is one sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. Failure to meet either *Strickland* prong is fatal to an ineffective assistance of counsel claim. *Thompson v. State*, 9 S.W.3d 808, 812-813 (Tex. Crim. App. 1999).

"Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and

16

professional assistance." *Bone*, 77 S.W.3d at 833 (citation omitted). Appellant must prove there was no plausible professional reason for specific acts or omissions of his counsel. *Id.* at 836. "Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 813 (citing *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1992)). Because the reasonableness of counsel's decisions and strategy often involves facts that do not appear in the appellate record, the record on direct appeal is usually insufficient to support an ineffective assistance claim. *Id.* at 813-14. However, "when no reasonable trial strategy could justify the trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects the trial counsel's subjective reasons for acting as [he] did." *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005) (citing *Strickland*, 466 U.S. at 690).

"In the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). When the record is silent as to the reasoning behind an alleged deficiency by trial counsel, "we will assume that counsel had a strategy if any reasonable sound strategic motivation can be imagined." *Id.*; *see also Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) ("[I]n the absence of evidence of counsel's reasons for the challenged conduct,

17

an appellate court . . . will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it.").

Generally, unless a record is created in the trial court that allows the attorney who represented the defendant to explain the reasons a case was handled the way it was handled at trial, the record in the direct appeal will not be sufficiently developed for the appellant to meet their burden to establish their attorney provided ineffective assistance of counsel in the trial unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quotations and citations omitted).

Shorten did not file a Motion for New Trial alleging ineffective assistance of counsel nor was there a hearing addressing counsel's effectiveness. Shorten's trial counsel was not afforded an opportunity to explain his actions, so we will not find his performance deficient unless the conduct was "so outrageous that no competent attorney would have engaged in it." *Id.*

Defense counsel called Sherrie Shorten as a defense witness. Her testimony spans 122 pages of the record. At about the halfway point during the direct examination of Sherrie, the trial court noted that there were some "repeats of issues with this particular witness[,]" referring to the trial court's sustaining some objections to questions that had been asked and answered, nonresponsive, relevant

and leading. The trial court, utilizing Texas Rule of Evidence 611, instructed the parties to "take it upon themselves to organize their questioning in order to present that evidence to the jury in the search for truth." After the defense attorney continued his direct examination of Sherrie, the trial court again admonished the parties about the proper mode of examination. The trial court for a third time admonished the parties on the questioning of Sherrie, noting that the witness had been on direct examination for two hours and thirty-two minutes, in excess of ninety minutes. The trial court allowed fifteen additional minutes of direct examination. Defense counsel's direct examination of Sherrie covered numerous topics, including her arrest, her time in prison, life on the school bus, Shorten's erectile dysfunction, Julie's rebellion, Julie's lying, Julie's use of electronic devices, and why she doesn't believe Shorten sexually assaulted Julie and Barbara.

Shorten further complains on appeal that his trial counsel violated "the ruling of the Court under Rule 614 in that she failed to communicate effectively the meaning of the Rule of Evidence 614 wherein witnesses once placed under the Rule are prohibited from communicating with other witnesses about the evidence heard during the trial." However, the record reflects that trial counsel explained the Rule to Sherrie. It was Sherrie and Shorten who chose to violate the Rule, notwithstanding the admonishments provided.

During the defense's case-in-chief, defense counsel conducted a direct examination of Barbara. Defense counsel attempted to elicit testimony from Barabara that she told Detective Fruchtnicht that her and Julie's allegations against Shorten were going to be similar. Outside the presence of the jury, the trial court instructed defense counsel to lay the predicate as to impeachment and recounted the steps needed for the proper predicate. The trial court allowed defense counsel to question Barbara on whether "she made those statements on an earlier date[]" but noted that the prior inconsistent statement was inappropriate for impeachment. Defense counsel then asked Barbara, "Didn't you tell the detective, 'I'm pretty sure that her incident is very similar to mine'?" to which Barbara responded, "Yes, sir." Barbara testified that she did not know how her story was similar to Julie's and that she did not talk to Julie.

Shorten further complains that his trial counsel rendered ineffective assistance of counsel by violating a motion in limine and Texas Rule of Evidence 412 during his questioning of the appellant. Before any objection based upon the motion in limine had been made, Shorten had testified that Barbara was acting as a prostitute and that she was not attending school. This testimony was proffered to show why Barbara started living with Shorten instead of Barbara's mother. The trial court later instructed the jurors to disregard the statement that Barbara was acting as a prostitute.

Shorten has not demonstrated that but for counsel's alleged errors, the outcome of his trial would have been different. *See Graves v. State*, 310 S.W.3d 924, 929 (Tex. App.—Beaumont 2010, pet. ref'd).

Moreover, the record is silent as to trial counsel's tactical and strategic decision-making. *See Estrada v. State*, 313 S.W.3d 274, 311 (Tex. Crim. App. 2010). Shorten cannot defeat the strong presumption that counsel's decisions during trial fell within the wide range of reasonable professional assistance. *See Thompson*, 9 S.W.3d at 814. Since we lack any basis in the record before us to conclude that the alleged failures of Shorten's trial counsel were "so outrageous that no competent attorney would have engaged in it[,]" we overrule Shorten's second and third issues. *Goodspeed*, 187 S.W.3d at 392 (internal quotations and citation omitted).

Conclusion

For the reasons explained above, we overrule Shorten's issues on appeal. Accordingly, the trial court's judgment is affirmed.

AFFIRMED.

KENT CHAMBERS
Justice

Submitted on June 29, 2026
Opinion Delivered July 29, 2026
Do Not Publish

Before Golemon, C.J., Wright and Chambers, JJ.

21